[No. A119005. First Dist., Div. Four. Feb. 20, 2009.]

EXECUTIVE RISK INDEMNITY, INC., Plaintiff and Respondent, v. REESE M. JONES, Defendant and Appellant.

COUNSEL

Howard Rice Nemerovski Canady Falk & Rabkin, Denis T. Rice, Jerome B. Falk, Jr., John Eichhorst; Lukens Law Group, William M. Lukens, Jennifer L. Jonak and Louis H. Pugh for Defendant and Appellant.

Stanzler Funderburk & Castellon and Jordan S. Stanzler for STARS Holding Company as Amicus Curiae on behalf of Defendant and Appellant.

Archer Norris, H. Paul Breslin and Sean D. White for Plaintiff and Respondent.

OPINION

## RUVOLO, P. J.—

## I.  INTRODUCTION

Respondent Executive Risk Indemnity, Inc. (ERII), issued a $10 million insurance policy to STARS Holding Company, Inc. (STARS, formerly known as myCFO, Inc.), providing coverage for claims arising from investment advice and financial planning services. Appellant Reese M. Jones (Jones), a

former client of STARS, brought an arbitration proceeding against STARS to recover damages for faulty investment and financial planning advice STARS gave him. From the start, ERII was aware of Jones's claim, and was repeatedly requested and encouraged to participate in the proceedings. ERII refused to do so, resting on the fact that its policy did not promise STARS a defense, only reimbursement of defense costs subject to a $250,000 retention. STARS was insolvent, a fact known to ERII, and was unable to mount a defense in the proceedings. Jones ultimately received an arbitration award against STARS for over $22 million following an uncontested hearing, which was judicially confirmed. ERII refused to pay any portion of the judgment, instead bringing this coverage action claiming that it had no obligations under the policy issued to its insured STARS.

This appeal arises out of the ensuing coverage action between Jones—to whom STARS assigned its rights under the insurance policy—and ERII. We focus on the pivotal issue of whether the arbitration award and resulting judgment obtained by Jones constitute a "Loss" for the purposes of the insurance policy ERII issued to STARS. The policy obligates ERII to pay for a "Loss" occasioned by a wrongful act which the insured becomes "legally obligated to pay," subject to the applicable terms and conditions of its policy.[1] The trial court concluded the arbitration award and judgment could not be considered to be a "Loss," even though STARS, the insured, was legally obligated to pay the amount, because ERII had not been a party to the arbitration proceeding nor was it in privity with any party to that proceeding. Therefore, the court concluded that under principles of collateral estoppel "ERII is not bound by the result obtained in the prior arbitration between Jones and S[TARS]."

The court then reopened the issues of STARS's liability and Jones's damages for an entirely new trial, in which evidence of the arbitration award and confirming judgment that Jones had previously obtained against STARS were ruled inadmissible. After an abbreviated court trial, the court found that ERII had no obligation to STARS under the policy based on its conclusion that "there is no showing that S[TARS] is liable to Jones or that S[TARS]

---

[1] "Loss" is defined in the policy, in relevant part, as follows: " 'Loss' means damages, judgments, awards, settlements and Defense Expenses which an Insured is legally obligated to pay as a result of a Claim." Of course, the policy's insuring clause states in general terms what the insurance company promises to cover—with that general promise of coverage then modified by the numerous declarations, exclusions, conditions, definitions, and endorsements that will, no doubt, be the subject of future proceedings in this case. (See *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 224 [39 Cal.Rptr.3d 33] (*Kaufman*).)

caused resulting damage to Jones." Jones appeals, claiming the court erred in holding that any determination of ERII's coverage obligations under the policy should include, in addition to the factual questions affecting coverage defenses, a complete retrial of the issues of STARS's liability to Jones for the faulty investment advice and the extent of Jones's damages.[2]

We reverse, finding the trial court erred in its application of the collateral estoppel doctrine. Under the facts of this case, ERII was bound by the results of the arbitration proceeding between its insured, STARS, and the injured party, Jones. Consequently, ERII cannot contest the validity of STARS's liability to Jones or the amount of damages as established by the judgment. Therefore, the court erred in precluding Jones, as STARS's assignee, from utilizing the arbitration award and judgment as a basis for recovering under the terms of the policy and requiring Jones to prove for a second time that STARS was liable for faulty investment advice that caused Jones's financial loss.

## II. FACTS AND PROCEDURAL HISTORY

ERII issued a Global Financial Services/Investment Company Professional and Management Liability Policy to STARS, effective April 1, 2002, to April 1, 2003, with a $10 million limit of liability (the policy). STARS paid ERII a $280,000 premium for the policy, plus an additional $420,000 for an extended coverage period.

On March 12, 2003, Jones initiated an arbitration with the American Arbitration Association (AAA) against his investment advisor, STARS, for the faulty investment advice it provided him. At the time of the arbitration demand, STARS had already declared itself insolvent and had assigned its assets for the benefit of creditors to Sherwood Partners, Inc. (Sherwood).[3] As assignee for the benefit of creditors, Sherwood tendered Jones's arbitration demand to ERII on March 23, 2004. ERII accepted the tender subject to a reservation of rights, but denied that it had a duty to defend STARS. ERII's position was based on the policy language, which expressly disclaimed a duty

---

[2] An amicus curiae brief has been filed by STARS in support of Jones's position on appeal.

[3] On March 26, 2003, STARS was placed in involuntary chapter 7 bankruptcy in the United States Bankruptcy Court, Northern District of California, San Francisco Division. An insurance company's obligations to its policyholder do not end if the policyholder is bankrupt or insolvent. (Ins. Code, § 11580.) However, we stress that the effect of STARS's insolvency on ERII's obligations under the policy is not an issue that is before us in this appeal.

to defend, but provided that, after satisfaction of the $250,000 retention, ERII was obligated to pay the insured's defense expenses on a current basis.[4] ERII claimed that, until its receipt of the $250,000 retention, it had no obligation to make any payment towards the defense of the underlying action. On a number of occasions thereafter, Sherwood informed ERII of STARS's insolvency and requested that ERII defend against Jones's claim, pointing out that STARS lacked funds to defend itself.

On May 16, 2005, the arbitration hearing was held before the Honorable Richard A. Hodge (retired). Although neither STARS nor ERII appeared at the arbitration, it was not a default proceeding. Rather, the arbitrator accepted evidence, admitted documents, and received testimony from witnesses.

On July 5, 2005, the arbitrator issued a written decision finding STARS liable and awarding Jones $22,618,481.78 in damages, plus 10 percent postaward interest (the award). On July 13, 2005, Jones served the "Notice of Award of Arbitrator" on ERII. Two weeks later, having received no response from ERII to the notice of award, Jones filed and served on ERII a petition in San Francisco County Superior Court to confirm the award.

On August 25, 2005, the Honorable James L. Warren of the San Francisco Superior Court granted Jones's motion to confirm the award and entered judgment against STARS in the amount of $22,934,520.84 plus 10 percent postaward interest (the judgment). Although given notice, neither STARS nor ERII appeared or opposed the motion to confirm the award.

On August 24, 2005, the day before entry of the judgment, ERII brought a declaratory action against Jones, Sherwood, and STARS, seeking a determination of coverage under the policy for loss in connection with the underlying litigation against STARS. In its complaint, ERII sought a declaration, among other things, that the award and judgment against STARS did not bind ERII under principles of collateral estoppel. In response, Jones cross-complained

---

[4] The policy before us resembles policies that are commonly issued to directors and officers of companies for claims asserted against them in their professional capacities (D&O policies). (See *Nabisco, Inc. v. Transport Indemnity Co.* (1983) 143 Cal.App.3d 831, 836 [192 Cal.Rptr. 207].) Unlike a comprehensive general liability policy, D&O policies are not written on a "duty to defend" basis. Rather, D&O policies are indemnity-only policies, whereby the insurer reimburses defense expenditures only after the insured selects counsel, controls the defense, and submits the defense bill. The liability limits of a D&O policy are inclusive of and depleted by the reimbursement of defense costs. Thus, the policy before us requires that ERII reimburse STARS for defense costs exceeding the $250,000 self-insured retention as those defense costs were incurred by STARS, subject in this case to the applicable $10 million policy limit.

against ERII, seeking, among other things, a determination of "the rights and duties of the parties under the policy, and the extent to which amounts are owed therein . . . ."[5]

After Jones's cross-complaint was filed, STARS, acting through Sherwood, assigned to Jones "[a]ny and all rights, Claims, causes of action and/or choses of action arising from or related to [ERII's] failure to defend, pay policy benefits or indemnify" under the policy or in connection with the award and judgment. Thus, in this case Jones asserts not only whatever claims inured to him as a third party beneficiary under the policy, but also any claims that STARS might have as ERII's insured.[6]

On April 11, 2006, the case was assigned to the Honorable Mary E. Wiss of the San Francisco Superior Court for all purposes. In a critical ruling on ERII's motion for summary adjudication on its declaratory relief action, the court concluded that the award and judgment Jones had obtained against STARS had no collateral estoppel effect on ERII because ERII did not participate in the arbitration proceeding and therefore was not in "privity" with STARS.[7]

In subsequent proceedings, the court defined the contours of its collateral estoppel ruling as it applied to ERII's obligation under the policy to pay for a "Loss" from claims made against its insured. First, the court accepted ERII's contention that it had no obligation to indemnify STARS for a "Loss" unless the judgment which constituted the Loss independently bound ERII under rules of collateral estoppel. Second, the court held that there could be no collateral estoppel in this case because there was no "privity" between ERII

---

[5] In his cross-complaint Jones claimed that because he obtained a judgment in the amount of $22,934,520.84 against STARS, ERII's insured, "defendant Jones has the right to bring this action directly against the Underwriter, ERII, under said policy."

[6] An insured involved in a coverage dispute with its insurance company may assign its claims against the insurance company to the third party plaintiff in exchange for a covenant not to execute against the insured's assets. This procedure frees the insured from monetary liability and, in turn, allows the plaintiff to step into the shoes of the insured and bring suit against the insurance company for whatever claims the insured might have had. (See generally 39A Cal.Jur.3d (2006) Insurance Contracts, § 567, pp. 533–535.)

[7] "In a new action on a *different* cause of action, a former judgment is conclusive against the parties and persons in privity with them on issues litigated in the former action. [Citation.]" (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 15.1081, p. 15-188 (rev. # 1, 2007).) " 'Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case; there is no universally applicable definition of privity.' [Citation.] The concept refers 'to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel.' " (*People v. Sims* (1982) 32 Cal.3d 468, 486–487 [186 Cal.Rptr. 77, 651 P.2d 321], disapproved on other grounds in *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 349–350 [272 Cal.Rptr. 767, 795 P.2d 1223].)

and STARS. The court reasoned that because "privity is established by demonstrating control" over the arbitration proceeding, there could be no privity in this case "[b]ecause ERII did not have a duty to defend" and was therefore justified in not taking an active role in the underlying proceedings.

As a result of these rulings, the court held that the issues of STARS's liability to Jones for the faulty investment advice, causation, and damages would have to be the subject of a second trial. The court also ruled that the award and judgment Jones had obtained against STARS were not only insufficient to trigger coverage under the policy, but were legally irrelevant to the question of whether STARS had sustained a covered "Loss" under the policy. Thus, the court ruled "[t]here shall be no evidence or reference to the arbitration proceedings Jones initiated against STARS, the Arbitration Award, or the Judgment confirming the Award during . . . the trial of this action."

Over Jones's continuing objections, the court divided the new trial into four parts or phases:

—Phase 1 would be a jury trial of "Jones'[s] claims against STARS," in which ERII would step into the shoes of STARS, its insured, and assert whatever defenses STARS might have had.

—Phase 2 would be a jury trial (before the same jury) in which ERII—no longer representing STARS's interests—would seek to prove the "factual predicates" of any coverage defenses or policy exclusions, for example, proving that STARS's conduct was willful, intentional or otherwise fit within one of the policy exclusions.

—Phase 3 would be a bench trial in which the trial court would determine whether damages found by the jury in phase 1 are covered by the policy, in view of the factual findings in phase 2.

—Finally, assuming that Jones prevailed during all three previous phases, phase 4 would be a jury trial before a *new* jury in which STARS—through its assignee, Jones—would seek to prove bad faith on the part of ERII.

On June 19, 2007, Jones and ERII agreed to an expedited trial of phase 1, which the court had ordered be limited to "Jones's liability and damages

claims against STARS." For purposes of this expedited trial, which took place on July 12, 2007, the parties waived a jury. Jones attempted to offer into evidence 15 exhibits—including the award and judgment—that Jones claimed collectively established the existence of a covered "Claim" and a "Loss" against STARS in the amount of $22,934,520.84, plus interest.[8]

The court sustained ERII's objections to the introduction of each of these 15 exhibits, finding that they were irrelevant to phase 1. The court explained that the proffered evidence was inadmissible in light of its prior holding that "[ERII] is not bound by the result in the prior arbitration between Jones and S[TARS]" and that in order to secure coverage, Jones must once again prove the issues of STARS's liability for faulty investment advice and the extent he was damaged.

ERII then moved for judgment as to phase 1, which the court granted. (Code Civ. Proc., § 631.8.) The court held that, because Jones had now lost phase 1 of the four-part trial, "there [was] no basis to proceed to Phases [2], [3] or [4] of the trial . . . ." On July 24, 2007, the trial court entered final judgment in favor of ERII on both the complaint and cross-complaint. Shortly thereafter, Jones filed his notice of appeal.

## III. DISCUSSION

In this coverage action where Jones, as STARS's assignee, seeks to recover under the policy issued by ERII, we consider whether the trial court erred in ruling that the award and judgment that Jones had previously obtained against STARS had no binding effect upon ERII. From the trial court's point of view, the award and judgment were simply irrelevant to any indemnity obligation ERII might have to STARS because ERII was not a party to the arbitration proceedings nor was it in privity with any party. Therefore, the court

---

[8] The 15 exhibits were (1) the policy; (2) the assignment for the benefit of creditors made from STARS to Sherwood; (3) the assignment of STARS's claims under the policy from Sherwood to Jones; (4) a letter providing STARS with notice of the arbitration demand; (5) the "Second Amended Demand for Arbitration" against STARS; (6) an e-mail providing notice to ERII of the arbitration demand; (7) the award (which was not offered for the truth of the finding contained therein, but only for the fact and amount of the award); (8) the "Notice of Award of Arbitrator," which was provided to ERII; (9) the petition to confirm the award, which was served on ERII; (10) the notice of motion and motion to confirm the award, also served on ERII; (11) the judgment of the San Francisco Superior Court confirming the award; (12) the notice of entry of judgment, served on ERII; (13) documents on file with the United States Bankruptcy Court for the Northern District of California, showing that STARS was placed into involuntary bankruptcy and that the bankruptcy case was dismissed in favor of insolvency procedure under state law; (14) an e-mail from counsel for Sherwood, giving notice to ERII that the arbitration proceedings would not be contested on behalf of STARS; and (15) an e-mail to ERII's counsel from Sherwood confirming that STARS was insolvent and would not be able to contest liability at the arbitration proceedings.

concluded that any determination of ERII's coverage obligations would have to include—in addition to factual questions affecting insurance coverage—a complete relitigation of the issues of STARS's liability to Jones for the faulty investment advice as well as the extent of Jones's damages. In accordance with this ruling, the trial court conducted an abbreviated trial and determined that Jones did not prove STARS's liability so as to trigger the terms of the policy. Thus, it ultimately found that ERII had no indemnification obligation, even though Jones had previously obtained a $22 million judgment against STARS that STARS was legally obligated to pay.

In our view, the analysis and procedure employed by the trial court were fundamentally flawed. First, in its analysis the trial court overlooked the unmistakable fact that the policy provides an express definition for determining ERII's liability with respect to third party claims resulting in a "Loss" to its insured. Here, the policy language unambiguously states that a "Loss" includes "damages, judgments, awards, settlements and Defense Expenses which an Insured is legally obligated to pay as a result of a Claim."

It is undisputed that the San Francisco Superior Court confirmed the award against STARS and entered judgment in the amount of $22,924,520.84 plus 10 percent interest for the harm arising from the faulty investment advice STARS gave to Jones. ERII does not contend that the judgment against STARS was unreasonable or the product of bad faith or collusion.[9] Consequently, it is undisputed that STARS is "legally obligated to pay" this judgment; and, under the terms of the policy, such payment is defined as a "Loss."

■    Absent any indication that the parties intended some special or legalistic meaning to be given to the definition of "Loss," it is settled that we must determine its meaning by interpreting the phrase as a reasonable layperson, not as an attorney or an insurance expert, would construe it. (*Crane v. State Farm Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129]; *State Farm Mut. Auto. Ins. Co. v. Crane* (1990) 217 Cal.App.3d 1127, 1133 [266 Cal.Rptr. 422].) Our Supreme Court in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815 [88 Cal.Rptr.2d 366, 982 P.2d 229], applied that principle to the very language we interpret here: "Under general insurance principles, we must interpret the phrase 'legally obligated to pay as damages' in accordance with the ordinary and popular

---

[9] "In deciding whether a judgment involving the injured party and the insured is binding on the insurer, courts focus on whether the facts have been adjudicated independently in a process that does not create the potential for abuse, fraud or collusion." (*National Union Fire Ins. Co. v. Lynette C.* (1994) 27 Cal.App.4th 1434, 1449 [33 Cal.Rptr.2d 496].) We emphasize at the outset of our discussion that ERII has never claimed that the arbitration award against its insured STARS was unreasonable or the product of fraud or collusion.

sense, not the legalistic, and erroneously premised, interpretation of the language urged by insurers." (*Id.* at p. 840.)

The trial court's conclusion that the benchmark of ERII's obligation to pay damages for a "Loss" was to be measured by the existence of a prior judgment or award rendered in a proceeding binding on the insurer under the trial court's interpretation of collateral estoppel imposes a significant new limitation of liability that is inconsistent with the language actually appearing in the policy. Had ERII intended to limit its obligation to indemnify STARS for a "Loss" only where it was in privity with STARS by actively defending the third party claim, it should have written that into the definition of "Loss." The insurer did not do so and we refuse to infer such a limitation to ERII's indemnity obligation into the insuring agreement.[10]

■ Additionally, we note that courts have generally examined the right of insurers to reopen and relitigate the liability of their insureds for covered losses and resulting damages, which have already been established by third party judgments, without resorting to principles of privity or collateral estoppel. Instead, the cases employ a distinct preclusion doctrine, which is more akin to the well-settled principles of contractual indemnity. (*Burns v. California FAIR Plan Assn.* (2007) 152 Cal.App.4th 646, 653 [61 Cal.Rptr.3d 809] [insurance contract is a contract of indemnity].) When discussing an insurer's right to relitigate its insured's liability, a leading treatise states the black letter rule in these terms: "One who has undertaken to indemnify another against loss arising out of a certain claim and has notice and opportunity to defend an action brought upon such a claim is bound by the judgment entered in such action, and is not entitled, in an action against him for breach of his agreement to indemnify, to secure a retrial of the material facts which have been established by the judgment against the person indemnified." (17 Couch on Insurance (3d ed. 2005) § 239:73, pp. 239-88 through 239-89, fn. omitted.)

California cases illustrating this proposition are legion, beginning with *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*). In *Clemmer*, an individual who was insured

---

[10] As we have noted, the trial court believed ERII's contractual obligation to indemnify under the policy depended upon the existence of privity with its insured in the underlying proceeding and that privity only existed when the insurer actually provided the insured with a defense or breached its duty to defend. If ERII's argument was accepted, and we inferred such terms into every indemnity policy, insureds with policies that impose no duty to defend—such as D&O policies or excess insurance policies—would have no way to avoid the absurd consequence of having to litigate the questions of liability and damages twice, once against the third party claimant and once again against the insurance company. None of the cases discussed by ERII, including those in its postoral argument supplemental briefing, provide justification for such a drastic alteration of the policy's definition of "Loss."

by the Hartford Insurance Company (Hartford) killed Dr. Clemmer. Dr. Clemmer's family sued Hartford's insured for wrongful death and obtained a default judgment of over $2 million. (*Id.* at pp. 871–872.) The family then sought to satisfy the default judgment in a direct statutory action against Hartford under Insurance Code section 11580.

The Supreme Court rejected Hartford's attempt to challenge the amount of damages awarded in the default judgment. The court held that although Hartford was not a party to the underlying litigation against its insured, it "received the kind of 'notice . . . of the pendency of the [wrongful death] action' which should result in its being bound by the amount of damages found in that action to have been sustained by plaintiffs." (*Clemmer, supra,* 22 Cal.3d at p. 884.) The court found that Hartford had sufficient notice despite the fact that it was first aware of the action "when, on the day before the hearing on default judgment following [the insured's] default, it was notified of that hearing by a telephone call and telegram from plaintiffs' attorney." (*Ibid.*) The court reasoned that Hartford could have "assume[d] control and management of the suit" by moving to set aside the judgment under Code of Civil Procedure section 473, but had failed to do so. (*Clemmer,* at p. 885.)

The court concluded: "Thus, under the circumstances, we hold that Hartford had ample opportunity to seek an adjudication of the damages. It knew or should have known that judgment against its insured would form the basis for a later claim against it under Insurance Code section 11580." (*Clemmer, supra,* 22 Cal.3d at p. 886.) Instead of protecting itself by seeking relief from default, Hartford "chose to remain silent, resting on its claim of noncoverage. Having failed to pursue remedies thus available to it, it cannot now claim prejudice or lack of opportunity to litigate damages." (*Ibid.*) Without any discussion of privity, collateral estoppel, or the duty to defend, *Clemmer* established the simple rule that an insurer with an opportunity to "assume control and management of the suit" is not entitled to relitigate damages as established by a valid third party judgment against its insured. (*Id.* at p. 885.)

Numerous cases have echoed the rationale and reasoning in *Clemmer.* It is now considered "well-settled" that "an insurer who is on notice of an action against its insured and refuses to defend on the ground the alleged claim is not within the policy coverage is bound by a judgment in the action, absent fraud or collusion, 'as to all material findings of fact essential to the judgment of liability [and damages] of the insured.' [Citations.]" (*Schaefer/Karpf Productions v. CNA Ins. Companies* (1998) 64 Cal.App.4th 1306, 1313 [76 Cal.Rptr.2d 42], italics omitted.)

Furthermore, to be enforceable against an insurer, a "judgment need not be based on a contested or adversarial trial, but may rest upon a default hearing

held following a settlement [citations] or an uncontested trial where the insured settled with the claimant and thereafter presented no defense. [Citation.]" (*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 516–517 [42 Cal.Rptr.2d 295], quoted in *Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 711 [10 Cal.Rptr.3d 724].) This rule is illustrated in numerous cases. (See, e.g., *Samson v. Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 228, 236–242 [178 Cal.Rptr. 343, 636 P.2d 32] [an insurer that refused to defend was bound by a judgment entered after its insured settled with the injured party]; *Zander v. Texaco, Inc.* (1968) 259 Cal.App.2d 793, 799, 804–806 [66 Cal.Rptr. 561] [an insurer that renounced coverage and defense was bound by a default judgment obtained after the insured did not appear at trial].) In these cases, insurers have been found to be obligated for the full amount of a valid judgment against their insureds, covered by the terms of their insurance policies, without any participation by the insured in the underlying proceedings, based upon notice and an opportunity to defend.

In other cases, courts have relied on the express language of the insurance policy obligating an insurer to indemnify its insured, to trigger the insurer's obligation to pay a valid third party judgment, notwithstanding the fact that the insurer had *no notice* of the underlying proceeding, thus depriving the insurer of any opportunity to defend the claim. (*Home Indemnity Co. v. King* (1983) 34 Cal.3d 803, 815–816 [195 Cal.Rptr. 686, 670 P.2d 340] [insurance company bound by stipulated judgment between injured person and insured even though insured failed to give insurance company notice of the underlying litigation or opportunity to defend the claim]; *Kruger v. California Highway Indem. Exch.* (1927) 201 Cal. 672, 675–676 [258 P. 602] [default judgment binding on insurer in the absence of fraud and collusion even though insurer was not a party to the action and had no notice of the action until after the judgment was rendered]; *Belz v. Clarendon America Ins. Co.* (2007) 158 Cal.App.4th 615, 620 [69 Cal.Rptr.3d 864] [absent a showing of actual prejudice from the insured's failure to provide notice of a third party claim, insurer not allowed to avoid its obligation to indemnify its insured when default judgment was taken against insured contractor].) Although these insurers had no notice or opportunity to participate in the defense of their insureds, courts have not allowed these insurers to avoid their contractual obligations based on a lack of privity, nor have the courts forced their insureds to undergo a second trial to once again determine liability and damages.

For the most part, the insurers profiled in these cases not only had a duty to indemnify their insureds against a covered loss, but they also had a contractual duty to provide their insureds with a defense. The prevalence of a contractual duty to defend in the reported cases is not surprising because insurance case law has developed largely in the context of the typical comprehensive general liability policy, which contains the dual duties of indemnification and defense.

Thus, courts have sometimes found an insurer bound by the results of the third party litigation against its insured based on the fact that the insurer refused to defend without legal justification. (See, e.g., *Amato v. Mercury Casualty Co.* (1997) 53 Cal.App.4th 825, 839 [61 Cal.Rptr.2d 909] [well established in California that an insurer that wrongfully refuses to defend is liable on the judgment]; *Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 822 [264 Cal.Rptr. 30] [same]; *Pruyn v. Agricultural Ins. Co.,* *supra,* 36 Cal.App.4th at p. 517 ["The insurer not only had a right to participate in and to control the litigation, it had a duty to do so."].)

But, unlike a standard comprehensive general liability policy, the policy before us is an indemnity-only policy that does not impose a duty to defend upon ERII. Instead, the policy requires ERII to reimburse its insured for defense costs exceeding the $250,000 self-insured retention, subject to the $10 million policy limit. We must determine if this difference, under the individualized facts of this case, compels a different result. The trial court believed it did. In finding the award and judgment that Jones had obtained against STARS were not entitled to preclusive effect in this coverage litigation, the court stated that only an insurer "who assumes control or who has an obligation to defend" is in privity with its insured, and therefore, "is bound by collateral estoppel."

ERII staunchly defends the trial court's reasoning, claiming that it had no duty whatsoever to defend STARS's interests in the arbitration proceeding, and for that reason alone, ERII asserts it cannot be bound to the judgment. However, it was not just STARS's interest that was at risk in the arbitration with Jones, but ERII's interest as well. In the event of an adverse judgment, ERII's policy would surely be invaded. Moreover, ERII has not directed us to a case where an insurer, with adequate notice and an opportunity to defend its interest in the underlying litigation, has been allowed the right to reopen or set aside a judgment against its insured simply because the insurer did not have a contractual obligation to defend.

In fact, ERII's argument runs counter to many cases, involving a variety of circumstances, in which insurers that were not legally obligated to or, in some cases, legally able to provide their insureds with a defense have been bound by judgments against their insured based upon notice and an opportunity to intervene and defend their own interests in the litigation. (See, e.g., *Diamond Heights Homeowners Assn. v. National American Ins. Co.* (1991) 227 Cal.App.3d 563, 580–583 [277 Cal.Rptr. 906] [an excess insurer with no duty to defend that is given notice of a settlement that invades its excess coverage has the choice of either assuming the defense or challenging the settlement on the grounds of unreasonableness, fraud or collusion—otherwise it is bound]; *Fuller-Austin Insulation Co. v. Highlands Ins. Co.* (2006) 135 Cal.App.4th

958, 988 [38 Cal.Rptr.3d 716] [primary insurer may negotiate a good faith settlement of a claim in an amount which invades excess coverage, and " 'may enter into [such settlement that] is binding on the excess insurer without the excess insurer's consent . . . .' "]; *Garamendi v. Golden Eagle Ins. Co., supra,* 116 Cal.App.4th at pp. 711–712 [insurance company could not relitigate the issues it otherwise had a right to litigate had it decided to intervene in third party lawsuit after insured's corporate status suspended and insurer was unable to defend in name of suspended corporation]; *Kaufman, supra,* 136 Cal.App.4th at pp. 224–225 [insurance company that represents insured whose corporate status has been suspended and for that reason cannot be defended in third party litigation must intervene in the initial lawsuit if it wishes to participate; otherwise, issues necessarily decided in that litigation are conclusively established against the insurer].)

■ From these cases involving a wide variety of factual circumstances, we conclude that when an insurer (1) is duly notified of the underlying claim against its insured; and (2) is given a full opportunity to protect its interests, the resulting judgment—if obtained without fraud or collusion—is binding against the insurer in any later coverage litigation on the claim involving its insured. This rule applies regardless of whether the insurer has a contractual duty to defend, or whether or not its refusal to participate in the underlying proceedings is legally justified.

■ The record confirms that ERII was repeatedly notified of the existence of Jones's claims against STARS for negligent financial advice, an issue implicating ERII's insurance coverage. Despite the entreaties of its insured, ERII refused to intervene or otherwise protect its own interests in the ensuing arbitration and judicial proceedings, although it clearly had the opportunity to do so.[11] Assuming ERII made a calculated decision not to intervene or otherwise protect its interest in these proceedings, it is not unfair to preclude ERII from relitigating the court-approved judgment's determination of STARS's liability and damages. As explained by the court in *Kaufman,* "If the insurance company declines to intervene in a lawsuit that it is allowed to participate in without penalty to its coverage defenses, that is its choice. It is not unfair that an insurance company is not entitled to relitigate issues in a second lawsuit that it had the right to litigate in the initial lawsuit. Rather,

---

[11] Generally speaking, an insurer should be allowed to intervene in an action against its insured when the insurer may be required to satisfy any judgment entered against the insured and when the insurer's intervention will not enlarge the issues in the case. (See, e.g., *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386–387 [100 Cal.Rptr.2d 807] [insurer allowed to intervene when insured barred from defending because corporate status suspended]; *Jade K. v. Viguri* (1989) 210 Cal.App.3d 1459, 1468–1470 [258 Cal.Rptr. 907] [insurer allowed to intervene to set aside default, and litigate liability and fault issues, when insured defendant was in jail].)

that potential result will encourage the insurance company to participate in the initial action." (*Kaufman, supra,* 136 Cal.App.4th at p. 225.)

During the course of these proceedings and again at oral argument, ERII has claimed that it is a "stranger" to the underlying proceedings between Jones and STARS; therefore, it is unfair to bind it to the award and judgment based solely on notice and an opportunity to participate in the proceeding. ERII has even gone so far as to suggest that its due process rights would be violated by such a result.[12] We reject this argument on the same grounds as the court in *Ridgway v. Gulf Life Ins. Co.* (5th Cir. 1978) 578 F.2d 1026. "[A] liability insurer is not, as [the insurer] well knows, a stranger to the judgment. [Citation.] The contractual relation of liability and social policy supply the necessary privity of party between insured and insurer to bind the latter." (*Id.* at p. 1029.) Based on this reasoning, the court in *Ridgway* indicated that "[a]lthough Ranger [the insurer] had no duty to defend under its contract, the court is of the opinion that this makes no difference with regard to the underlying principle of estoppel by judgment involved. Ranger had the right to defend and had adequate notice of a claim under the terms of this policy." (*Ibid.*) We hold similarly that, because ERII had notice of the underlying action against its insured as well as the right to participate in the underlying proceeding, it is precluded from relitigating the award and judgment entered against its insured in this coverage action.

The requirement that an insurer protect itself in the original action on the issues of liability and damages makes sense. A contrary holding would encourage an insurer who receives notice of a third party claim against its insured to wait and see whether the outcome will be in its insured's favor while not running the risk of being bound by an adverse judgment. If the insured loses, and seeks insurance coverage for its loss, the insurer could then demand relitigation of the identical issues of the insured's liability and extent of damages—a manifestly unfair prospect when the insurance company could easily have participated in the initial lawsuit to protect its own interests. Furthermore, requiring the insurer to contest liability and damages in one proceeding also eliminates the possibility that the two proceedings will produce inconsistent results, as occurred here.

---

[12] ERII's due process argument rests largely on *Taylor v. Sturgell* (2008) 553 U.S. ___ [171 L.Ed.2d 155, 128 S.Ct. 2161], a case decided by the United States Supreme Court after ERII's brief had been filed in this appeal. *Taylor* explores the due process contours of "the general rule that a litigant is not bound by a judgment to which she was not a party. [Citations.]" (*Id.* at p. ___ [128 S.Ct. at p. 2175].) However, *Taylor* did not involve an insurer with an agreement to indemnify its insured against a loss caused by a judgment the insured is obligated to pay. The claims and issues in this case are entirely different than those litigated in *Taylor*; consequently, *Taylor* does not alter the analysis or result in this case.

## IV. DISPOSITION

The judgment is reversed and remanded for further proceedings to determine whether ERII was required to indemnify STARS for the loss resulting from the faulty investment advice STARS gave Jones while the policy was in effect. In these proceedings, ERII is precluded from relitigating STARS's liability to Jones or the extent of Jones's damages because these issues were conclusively established by the award and judgment. However, the parties remain free to litigate all of the other coverage questions that must be determined in establishing the parties' obligations and duties under the insurance policy issued by ERII to STARS.

Costs are awarded to Jones.

Reardon, J., and Rivera, J., concurred.

A petition for a rehearing was denied March 12, 2009, and respondent's petition for review by the Supreme Court was denied May 13, 2009, S171693. Kennard, J., was of the opinion that the petition should be granted.