Filed 10/15/15  Perea v. Sanchez CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARTHA PEREA,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>OMAR SANCHEZ,<br><br>        Defendant;<br><br>ALLIANCE UNITED INSURANCE COMPANY,<br><br>        Movant and Appellant. | A142050<br><br>(Alameda County<br>Super. Ct. No. RG10519832) |

Alliance United Insurance Company (Alliance) appeals from the trial court's denial of its motion to vacate a default judgment entered against defendant Omar Sanchez (defendant) in favor of plaintiff and respondent Martha Perea (plaintiff).  We find Alliance—a nonparty to this action—lacks a sufficient interest in the judgment to seek the requested relief, and affirm.

BACKGROUND

In May 2009, plaintiff and her daughter were injured when their car was struck by a car owned by defendant.  The person driving defendant's car fled the scene of the accident on foot.  Plaintiff subsequently filed a claim with Alliance, defendant's insurance carrier.  Defendant apparently told Alliance his car had been stolen prior to the accident, and Alliance denied the claim on that ground.

1

In June 2010, plaintiff, individually and as guardian ad litem for her daughter, filed the instant personal injury lawsuit against defendant. In July, plaintiff attempted to personally serve defendant at the address listed for him in the police report on the accident. The process server was told defendant was "not known" at that address.

In August 2010, plaintiff asked Alliance to provide defendant's address or to accept service on his behalf. Alliance refused both requests. Plaintiff subsequently subpoenaed Alliance's records for defendant's policy; Alliance refused to comply with the subpoena and informed plaintiff it would file a motion to quash.

In September 2010, plaintiff filed a case management statement describing her efforts at service and attaching the process server's declaration of diligence, correspondence between plaintiff and Alliance documenting Alliance's refusal to accept service or provide defendant's contact information, and plaintiff's subpoena of Alliance's records. Plaintiff submitted a proposed order seeking alternatively an order directing Alliance to accept service on defendant's behalf, an order directing Alliance to respond to the subpoena, or an order authorizing service by publication. At the conclusion of the October 25 case management conference, the trial court issued the order authorizing service by publication.

After this case management conference, plaintiff continued to pursue the subpoena in an apparent attempt to effect personal service despite the order authorizing service by publication. In November, counsel for Alliance requested to meet and confer with plaintiff's counsel about the subpoena. Alliance represented to plaintiff's counsel that, with respect to defendant's contact information, "we have no better information than you do." In fact, this representation was not correct. In declarations submitted with Alliance's motion to vacate the default judgment, an Alliance employee conceded the address for defendant listed on the police report transposed two numbers, and therefore did not match the address listed in Alliance's files. She stated she had not previously noticed the error. Based on this representation—which, at the time, plaintiff did not know was inaccurate—plaintiff withdrew the subpoena.

Service was published in November 2010. In April 2011, after a default hearing following defendant's failure to answer, plaintiff obtained a default judgment of approximately $125,000.

Alliance was contemporaneously aware of every significant development in this case. Plaintiff gave Alliance a copy of the complaint and informed Alliance in August 2010 that she would seek authorization to serve defendant by publication if she was unable to personally serve him. Alliance asked plaintiff to keep it advised of developments in the case and plaintiff did so. Alliance knew when the order authorizing service by publication issued. Following issuance of the order, plaintiff informed Alliance she planned to obtain a default judgment following service. Alliance asked for the name of the publication for service and asked to be informed when plaintiff planned to obtain the default judgment. Alliance was aware of the completion of service by publication and of plaintiff's request for an entry of defendant's default. Alliance knew when the default hearing was scheduled and when the default judgment issued.

Meanwhile, Alliance was aggressively trying to reach defendant. Between September 2010 and April 2011, Alliance left defendant numerous telephone messages and mailed him numerous letters. Alliance spoke with defendant's wife, who informed them defendant was out of the country and lacked documentation to allow him entry into the United States. Alliance conducted a "skip trace" to try to locate defendant. Alliance's efforts were all unsuccessful.

In June 2011, plaintiff received a letter from Alliance denying her claim on the ground that "no coverage existed between [Alliance] and our insured for this particular accident." Plaintiff subsequently requested assistance from the Department of Insurance. In November 2012, Alliance informed plaintiff: "our coverage denial for the above referenced loss remains unchanged," and "we are unable to divulge the nature of the coverage issue to you, a third party."

In April 2013, plaintiff filed a separate lawsuit against Alliance seeking payment of the judgment pursuant to Insurance Code section 11580. In December 2013, Alliance filed a motion in the instant action seeking to set aside the default judgment pursuant to

3

Code of Civil Procedure section 473, subdivision (d) (section 473(d)).[1]  Alliance argued the default judgment was void on its face because the requisite showing of diligence to authorize service by publication had not been made.  The trial court denied Alliance's motion.  Alliance subsequently moved for reconsideration of, or relief under section 473, subdivision (b) from, the trial court's order on its section 473(d) motion.  The trial court denied these motions but, in the same order, modified its order denying Alliance's section 473(d) motion.  Alliance now appeals from the trial court's denial of all three motions.

DISCUSSION

Section 473(d) provides, in relevant part, a court "may, *on motion of either party* after notice to the other party, set aside any void judgment or order."  (Italics added.)  Although section 473(d) refers only to parties, "[a] stranger to an action who is aggrieved by a void judgment may move to vacate the judgment."  (*Ryerson v. Riverside Cement Co.* (1968) 266 Cal.App.2d 789, 795 (*Ryerson*); accord, *People v. Silva* (1981) 114 Cal.App.3d 538, 547 ["a stranger may attack a void judgment if some right or interest in him would be affected by its enforcement"].)  Courts have defined an "aggrieved party" as "one 'whose rights or interests are injuriously affected by the judgment. [Citations.] [The aggrieved party's] interest " 'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment.' " ' "  (*Tomassi v. Scarff* (2000) 85 Cal.App.4th 1053, 1057 (*Tomassi*) [defining phrase for purposes of section 663, which authorizes court "upon motion of the party aggrieved" to set aside judgment based on court decision that has an erroneous legal basis, is inconsistent with facts, or is unsupported by a special verdict].)[2]

---

[1] All undesignated section references are to the Code of Civil Procedure.

[2] In response to our request for supplemental briefing, Alliance suggests for the first time that no showing of interest is required to vacate a void judgment.  Alliance has forfeited this argument by failing to raise it in the trial court or in its opening brief in this court.  (*Kelly v. CB&I Constructors*, Inc. (2009) 179 Cal.App.4th 442, 451–452.)  In any event, Alliance's citation to cases predating the enactment of the predecessor statute to section 473(d) are inapposite, as the statute expressly provides the motion may be made by "any party."  (See *Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72

4

In the trial court and in supplemental briefing on appeal, Alliance argued it has sufficient interest to move to vacate the judgment because of plaintiff's lawsuit against Alliance attempting to collect on the default judgment against its insured. To determine whether this is a sufficient interest, we must first consider the legal principles governing an insurer's liability for such judgments.

Insurance Code section 11580, subdivision (b)(2), " 'provides insurance policies issued in California shall either contain the following provision or shall be construed as if this provision is in the policy: "A provision that whenever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Thus, a judgment creditor who has prevailed in a lawsuit against an insured party may bring a direct action against the insurer subject to the terms and limitations of the policy.' " (*Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196, 1204–1205 (*Western Heritage*).)

"[C]ourts have generally examined the right of insurers to reopen and relitigate the liability of their insureds for covered losses and resulting damages, which have already been established by third-party judgments, without resorting to principles of privity or collateral estoppel. Instead, the cases employ a distinct preclusion doctrine, which is more akin to the well-settled principles of contractual indemnity. [Citation.] When discussing an insurer's right to relitigate its insured's liability, a leading treatise states the

Cal.App.4th 1, 19, fn. 11 ["Code of Civil Procedure section 473 [initially] permitted relief from a judgment taken through mistake, inadvertence, surprise, or excusable neglect provided that 'application therefor be made within a reasonable time, but in no case exceeding six months after such judgment . . . was taken.' (Stats. 1917, ch. 159, § 1, pp. 242-243.) In 1933, the Legislature amended the section and added in a fourth paragraph: 'The court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order.' (Stats. 1933, ch. 744, § 34, pp. 1851-1852.)"].) Alliance cites *Plaza Hollister* for the proposition that the added language did not change existing law, but the court was discussing time limits on bringing the motion, not *who* may bring it. (*Ibid.*)

black letter rule in these terms: 'One who has undertaken to indemnify another against loss arising out of a certain claim and has notice and opportunity to defend an action brought upon such a claim is bound by the judgment entered in such action, and is not entitled, in an action against him for breach of his agreement to indemnify, to secure a retrial of the material facts which have been established by the judgment against the person indemnified.' " (*Executive Risk Indemnity, Inc. v. Jones* (2009) 171 Cal.App.4th 319, 329 (*Executive Risk*).)

If the insured cannot or is not defending the action, an insurer has the opportunity to contest liability and damages by intervening. While " ' "[g]enerally . . . an insurer may not be joined as a party-defendant in the underlying action against the insured by the injured third party," an insurer may intervene "if its insured is not defending an action, to avoid harm to the insurer." (*Royal Indemnity Co. v. United Enterprises, Inc.* (2008) 162 Cal.App.4th 194, 205, 206.) " '[I]ntervention by an insurer is permitted where the insurer remains liable for any default judgment against the insured, and it has no means other than intervention to litigate liability or damage issues.' " (*Western Heritage, supra,* 199 Cal.App.4th at p. 1205.)

However, if an insurer with notice of the claim refuses to defend or intervene, it will be bound by the judgment. "It is now considered 'well-settled' that 'an insurer who is on notice of an action against its insured and refuses to defend on the ground the alleged claim is not within the policy coverage is bound by a judgment in the action, absent fraud or collusion, "as to all material findings of fact essential to the judgment of liability [and damages] of the insured." ' " (*Executive Risk, supra,* 171 Cal.App.4th at p. 330.) Similarly, where an insurer "made a calculated decision not to intervene or otherwise protect its interest in [the underlying] proceedings, it is not unfair to preclude [the insurer] from relitigating the court-approved judgment's determination of [its insured's] liability and damages." (*Id.* at p. 333.) Indeed, "[a] contrary holding would encourage an insurer who receives notice of a third-party claim against its insured to wait and see whether the outcome will be in its insured's favor while not running the risk of being bound by an adverse judgment. If the insured loses, and seeks insurance coverage

6

for its loss, the insurer could then demand relitigation of the identical issues of the insured's liability and extent of damages—a manifestly unfair prospect when the insurance company could easily have participated in the initial lawsuit to protect its own interests." (*Id.* at p. 334.)

Although an insurer who has refused to defend or intervene in the underlying action cannot relitigate liability or damages, it retains the opportunity to argue in a subsequent action that the claim was not within the policy coverage. (*Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 717–718 [an insurer that refuses to defend " 'is not bound . . . as to issues not necessarily adjudicated in the prior action and can still present any defenses not inconsistent with the judgment against the insured' "].) Moreover, insurers do not lose the opportunity to defend on noncoverage grounds in a later action by providing a defense or intervening in the underlying action, as long as they reserve the right to present this defense. (*Id.* at p. 719.) Thus, if an insurer with notice of an action against its insured wants to challenge liability, damages, and coverage, despite an entry of default against its insured, the insurer can do so by intervening in the underlying action to contest liability and damages while reserving its right to contest coverage in a subsequent action. If it fails to intervene, it may still contest coverage, but it loses the opportunity to litigate liability and damages.

We now apply these principles to the instant case. Alliance represented to plaintiff, without explanation, that its policy does not cover plaintiff's claim. Alliance could not locate defendant so it had no opportunity to provide him with a defense with a reservation of rights. However, because defendant could not be found, Alliance had the opportunity to intervene on its own behalf to litigate defendant's liability and/or damages, while reserving its right to defend on lack of coverage. It declined to do so. Our question is whether, under these circumstances, Alliance has a sufficient interest in the judgment to enable it to make a section 473(d) motion.

*Tomassi, supra,* is instructive. In *Tomassi,* a liability insurer refused to defend its insured. (*Tomassi, supra,* 85 Cal.App.4th at p. 1055.) Its insured entered into an agreement with the plaintiffs limiting damages but guaranteeing plaintiffs a certain

7

minimum recovery. (*Ibid.*) At a bench trial, the insured did not submit a trial brief, cross-examine the plaintiffs' witnesses, or object to certain offers of proof. (*Id.* at p. 1056.) The trial court issued a statement of decision finding the insured liable. (*Ibid.*) The insured subsequently filed a complaint against the insurer. (*Ibid.*) Following the filing of this complaint, the insurer moved in the underlying action to vacate the judgment pursuant to section 663, arguing the court's decision was not supported by the facts. (*Id.* at pp. 1056–1057.) The trial court denied the motion on the ground the insurer "lacked standing as an 'aggrieved' party within the meaning of . . . section 663." (*Id.* at p. 1055.)

The Court of Appeal affirmed, holding a liability insurer that refuses to defend its insured "is not aggrieved" by the judgment against its insured sufficient to confer nonparty standing to vacate the judgment because "[t]he effect of the . . . judgment on [the insurer] is only indirect and contingent, not direct and immediate." (*Tomassi, supra,* 85 Cal.App.4th at pp. 1058–1059.) The court reasoned the insurer "will not necessarily be bound by the finding that [its insured] was liable" because the insurer "will have the opportunity to assert not only that no coverage existed but also that the liability judgment was a product of collusion" between the insured and the plaintiffs. (*Id.* at p. 1058.) The court distinguished an earlier case permitting an insurer to intervene in the underlying action because in *Tomassi* the insurer "made no attempt to intervene in the action, but instead refused to become involved until an unfavorable judgment had been reached against" the insured. (*Id.* at pp. 1058–1059, fn. 5.)

We see no meaningful distinction between *Tomassi* and the case before us.[3] Alliance—despite being aware of every step of the litigation below—made no attempt to

_____

[3] While *Tomassi* involved a claim that the insured colluded with the plaintiff (*Tomassi, supra,* 85 Cal.App.4th at p. 1058 & fn. 4), this is not meaningful because Alliance makes no such claim here. In addition, although *Tomassi* involved a motion brought under section 663 rather than section 473(d), the nonparty standing analysis appears to be substantially the same. (Compare § 663 [motion may be made by "the party aggrieved"], with *Ryerson, supra,* 266 Cal.App.2d at p. 795 ["[a] stranger to an action who is aggrieved by a void judgment may move to vacate the judgment"].)

intervene or set aside the default judgment until well over two years had passed since the judgment issued. Shortly after the default judgment issued, knowing everything it knows now, Alliance chose to deny coverage rather than challenge the judgment.[4] Our decision does not prevent Alliance from continuing to deny coverage in plaintiff's Insurance Code section 11580 action; if successful, Alliance, like the insurer in *Tomassi*, will not be bound by the judgment in this case.

Alliance protests that unless it has standing to file a section 473(d) motion, it will be "deprived of a right to . . . litigate the *validity* of the judgment." We disagree. Alliance had ample opportunity to litigate the validity of the judgment at the time it issued. It chose to not do so and instead rest on its coverage denial. *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, relied on by Alliance, does not stand for the proposition that insurance companies always have standing to vacate default judgments.[5]

We conclude Alliance's interest in the judgment is not sufficient to permit it to move to vacate the judgment under section 473(d).[6]

---

[4] Alliance records obtained by plaintiff during discovery in the Insurance Code section 11580 action suggest Alliance might have provided a defense if defendant had appeared. Nonetheless, when defendant could not be located, Alliance failed to intervene or attempt in any way to protect its interests in this action until well over two years after the default judgment issued. (See *Tomassi, supra,* 85 Cal.App.4th at pp. 1058–1059, fn. 5 [insurer "made no attempt to intervene in the action, but instead refused to become involved until an unfavorable judgment had been reached against" the insured].) Alliance's contention in its supplemental briefs that "[a]n insurer cannot ask a lawyer to enter an appearance for a party without prior consent" is of no moment, in light of its ability to intervene on its own behalf as discussed above. Alliance also argues its coverage defense "is not an ordinary one" because it is based on defendant's breach of cooperation. However, Alliance fails to explain why the basis for its coverage defense is relevant here.

[5] Because we conclude appellant lacks standing, we need not address the merits of its argument that the judgment it challenges is void.

[6] Although this was not the ground the trial court relied on in denying Alliance's motion, we may affirm on any ground supported by the record. (*Muller v. Fresno Community Hosp. & Medical Center* (2009) 172 Cal.App.4th 887, 906–907 ["It is the ruling, and not the reason for the ruling, that is reviewed on appeal."].) Because we affirm the trial court's section 473(d) ruling on this ground, any error in denying Alliance's motions for reconsideration or for section 473, subdivision (b) relief is harmless.

9

DISPOSITION

The trial court's orders are affirmed.  Respondent shall recover her costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A142050)

11