**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 7 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MILLENNIUM LABORATORIES, INC., | No. 16-55432 |
| Plaintiff-Appellant, | D.C. No. 3:12-cv-02280-BAS-KSC |
| v. | |
| ALLIED WORLD ASSURANCE COMPANY (U.S.), INC., | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Southern District of California
Cynthia A. Bashant, District Judge, Presiding

Argued and Submitted February 8, 2018
Pasadena, California

Before: REINHARDT, W. FLETCHER, and OWENS, Circuit Judges.

Plaintiff-Appellant Millennium Laboratories, Inc. ("Millennium") appeals

from the district court's grant of summary judgment to Defendant-Appellee Allied

World Assurance Co. ("Allied World") on Millennium's claims for breach of

contract, breach of the covenant of good faith and fair dealing, and declaratory

relief. As the parties are familiar with the facts, we do not recount them here. We

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1.  The question whether the policy required Allied World to contemporaneously reimburse Millennium's defense costs for potentially covered claims is not moot.  Had Allied World been obligated to reimburse defense costs for any potentially covered claims from the time that they were incurred until those claims were determined *not* to be covered, then Millennium would be entitled to interest for any such costs withheld, even if, in the end, they would be subject to recoupment by Allied World.  Cal. Civ. Code § 3302; *Oil Base, Inc. v. Transport Indem. Co.*, 306 P.2d 924, 926 (Cal. Ct. App. 1957).

2.  The policy was an indemnity-only policy, however, and therefore did not require the contemporaneous advancement of Millennium's defense costs.  "D & O policies are indemnity-only policies, whereby the insurer *reimburses* defense expenditures only *after* the insured selects counsel, controls the defense, and submits the defense bill."  *Exec. Risk. Indem., Inc. v. Jones*, 89 Cal. Rptr. 3d 747, 751 n.4 (Ct. App. 2009) (emphasis added).  The language of the policy's reimbursement provision confirms this: it required Allied World, at Millennium's request, to "reimburse" defense costs.  If, as Millennium contends, the policy were a liability-type policy, then this provision would be surplusage, as the policy's coverage provisions would already have obligated Allied World to pay Millennium's defense costs as soon as they were incurred.  *See Okada v. MGIC*

2

*Indem. Corp.*, 823 F.2d 276, 280 (9th Cir. 1986); *see also* Cal. Civ. Code § 1641; *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 22 Cal. Rptr. 2d 206, 213 (Ct. App. 1993).

3.  Allied World's duty to reimburse, moreover, applied only to claims actually covered by the policy and did not extend to claims merely potentially covered. "Unlike a comprehensive general liability policy, D & O policies are not written on a 'duty to defend' basis." *Jones*, 89 Cal. Rptr. 3d at 751 n.4. "Instead, defense costs are defined as part of 'Damages' for which indemnification is to be paid." *Health Net, Inc. v. RLI Ins. Co.*, 141 Cal. Rptr. 3d 649, 670-71 (Ct. App. 2012). Such was the case here: the policy expressly disclaimed any duty to defend and instead provided for coverage of defense costs only as an ingredient of covered losses. And "in the absence of a contractual duty to defend, when defense costs are recoverable *only* as covered losses, only those defense costs which were *actually* related to the defense of covered claims may be reimbursed." *Id.* at 671 (second emphasis added).

4.  The Department of Justice ("DOJ") investigation did not constitute a single "claim" for policy purposes. The policy's definitions of "claim" are "concerned with the temporal certainty of the 'Claim,'" rather than with "its scope." *Id.* at 672-73. Thus, the investigation is properly viewed as multiple claims, one for each alleged "wrongful act," "error, or omission" by an insured that the DOJ

3

investigated.

5. Millennium identifies seven alleged wrongful acts, errors, or omissions that the DOJ investigated but that purportedly were not subject to the specific-claim or pending-or-prior-litigation exclusions. Contrary to Millennium's argument, the record shows that five claims were excluded from coverage. As to the remaining two, Millennium has failed to raise a triable issue as to whether they were covered by the policy at all.

First, Millennium's allegedly improper use of standing orders, sometimes called "custom profiles," to increase drug-testing orders was expressly alleged in the *Schur* action and was therefore "related" to that litigation. Thus, any of Millennium's defense costs arising from the investigation of its allegedly improper use of "custom profiles" were subject to the pending-or-prior-litigation exclusion.

Second, the DOJ's investigation of Millennium's "Section A issues" "related" to the *Schur* action as well. The complaint in *Schur* alleged that Millennium "did not require healthcare providers . . . to execute or properly fill out the confirmation testing requisition indicating which positives and which negatives if any, needed to be confirmed." Thus, any defense costs arising from the investigation of these alleged "Section A issues" were subject to the pending-or-prior-litigation exclusion.

Third, although the record contains evidence indicating that Millennium did

4

not first speak to the DOJ about its allegedly improper "specimen validity testing" until after the policy expired, Millennium has put forward no evidence that the DOJ investigated this alleged wrongful act during the policy period. Thus, Millennium has failed to show a triable issue over whether any defense costs associated with the investigation of this alleged act were covered by the policy. *See Royal Globe Ins. Co. v. Whitaker*, 226 Cal. Rptr. 435, 437 (Ct. App. 1986); *see also Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

Fourth, the DOJ's investigation of alleged witness intimidation also related to prior or pending litigation, namely the *Ameritox* action, which alleged substantially the same intimidating conduct by Millennium employees as the DOJ's complaint in intervention. *See* Defendant Allied World Assurance Co. (U.S.) Inc.'s Request for Judicial Notice in Support of Its Motion for Summary Judgment at 190-91, *Millennium Labs, Inc. v. Allied World Assurance Co.*, No. 3:12-CV-02280-BAS-KSC (S.D. Cal. May 23, 2014), ECF No. 161-4. Thus, the DOJ's investigation into this conduct "derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged" in the *Ameritox* action. Any defense costs arising therefrom were therefore subject to the prior-or-pending-litigation exclusion.

Fifth, the DOJ's complaint in intervention contends that Millennium's alleged practice of terminating relationships with or otherwise penalizing client-

5

providers who did not order sufficient urine tests—the "troubled accounts" issue—was part and parcel of Millennium's broader alleged practice of causing the unlawful ordering of unreasonable and unnecessary urine testing in violation of Medicare and other regulations. Because the *Cunningham* action alleged this broader practice, of which the alleged troubled-accounts practice was but a part, the DOJ's investigation of the alleged troubled-accounts practice necessarily "derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged" in the *Cunningham* action. Defense costs associated with that part of the investigation were therefore excluded under the pending-or-prior-litigation exclusion.

Sixth, the only record evidence regarding the DOJ's investigation into Millennium's alleged destruction of evidence indicates that that portion of the investigation did not begin until after the policy's coverage period expired. Because Millennium has put forward no evidence that the DOJ investigated this alleged wrongful act during the policy period, it has failed to show a triable issue over whether any defense costs associated with the investigation of this alleged act were covered by the policy. *See Royal Globe Ins. Co.*, 226 Cal. Rptr. at 437; *see also Jackson*, 902 F.2d at 1389.

Seventh, as with the troubled-accounts issue, the DOJ's complaint in intervention contends that Millennium's alleged practice of frequently testing

6

patients with no history of drug abuse was part and parcel of Millennium's broader alleged practice of causing the unlawful ordering of unreasonable and unnecessary urine testing in violation of Medicare and other regulations. Because the *Cunningham* action alleged this broader practice, of which the frequency-of-testing issue was but a component, the DOJ's investigation of the alleged frequency-of-testing issue necessarily "derived from the same or essentially the same facts, or the same or related **Wrongful Acts**, as alleged" in the *Cunningham* action. Defense costs associated with that part of the investigation were therefore excluded under the pending-or-prior-litigation exclusion.

**AFFIRMED.**